Filed 4/9/26  Keller v. Bisno CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| KATHERINE D. KELLER, | B344298 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24STCV04204) |
| v. | |
| JEANETTE ANN BISNO et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Joseph Lipner, Judge.  Reversed with directions; dismissed.

Robert H. Bisno, in pro. per.; Law Offices of Robert H. Bisno and Robert H. Bisno for Defendants and Appellants Jeanette Ann Bisno, Bisno Management Company, LLC, Bisno Real Estate Group, LLC, Bisno Development Enterprise LLC, and The Bisno Family Limited Partnership.

Willoughby & Associates, Anthony Willoughby, and Anthony Willoughby, II for Plaintiff and Respondent.

_____

**INTRODUCTION**

In 2018 Jeanette Ann Bisno battered Katherine D. Keller in a Beverly Hills parking garage. The video footage of the incident showed Jeanette was the aggressor,[1] and she eventually pleaded no contest to misdemeanor battery. That should have been the end of it.

But Jeanette, represented by her husband, attorney Robert H. Bisno, sued her victim for civil assault and battery. Jeanette eventually admitted Keller never touched her, but Jeanette prosecuted her tort action against Keller for more than two years before dismissing the case. Keller, meanwhile, prevailed on her cross-complaint against Jeanette for assault, battery, and intentional infliction of emotional distress, although a different division of this court reduced the amount of her judgment.

In this action Keller sued Jeanette, Robert, and related business entities (Law Office of Robert H. Bisno, Bisno Management Company, LLC, Bisno Real Estate Group, LLC, Bisno Development Enterprise LLC, The Bisno Family Limited Partnership, all alleged alter egos of Jeanette and Robert; the Bisno business entities), alleging malicious prosecution and violation of the Tom Bane Civil Rights Act (Civ. Code, § 52.1;

_____

[1] We refer to Jeanette Bisno and Robert Bisno by their first names to avoid confusion.

Bane Act).  Keller alleged, among other things, that Jeanette and Robert knew the underlying tort case against Keller lacked merit and that they prosecuted the case for an improper and unlawful purpose.

The Bisno parties filed a special motion to strike Keller's complaint under Code of Civil Procedure section 425.16,[2] arguing that Keller's causes of action arose from protected litigation conduct and that Keller would not prevail on her causes of action. The trial court denied the special motion to strike, ruling that some of the alleged conduct was protected under section 425.16, but that Keller demonstrated her claims had the minimal merit required to defeat the special motion to strike.

We agree with the trial court in part.  In her cause of action for malicious prosecution Keller alleged Jeanette and Robert engaged in improper litigation tactics.  That conduct is plainly protected under section 425.16, subdivision (e)(1) and (2).  But Keller demonstrated a probability of prevailing on her cause of action for malicious prosecution.  Regarding the Bane Act cause of action, however, Keller failed to allege an essential element of that cause of action.  Therefore, we reverse the order granting Keller's special motion to strike and direct the trial court to enter a new order denying the motion to strike Keller's cause of action for malicious prosecution and granting the motion to strike her cause of action for violation of the Bane Act.  Finally, we dismiss the appeal from the order awarding Keller attorneys' fees and costs as from a nonappeable order.

---

[2]     Undesignated statutory references are to the Code of Civil Procedure.

3

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *Jeanette Physically Attacks Keller in a Beverly Hills Parking Garage and Pleads Guilty to Misdemeanor Battery*

On December 12, 2018 Jeanette attacked Keller in a parking garage in Beverly Hills, after accusing Keller of taking her parking spot. Law enforcement officers viewed video surveillance footage of the incident, located Jeanette, and cited her for battery. Jeanette later pleaded no contest to misdemeanor battery.

B.      *Jeanette Files a Civil Action Against Doe Defendants and Amends the Complaint To Name Keller; Keller Files a Cross-complaint*

On December 20, 2018—a week after the parking garage incident—Jeanette (represented by Robert) filed a complaint against Doe defendants alleging causes of action for assault, battery, intentional infliction of emotional distress, false imprisonment, and false arrest. After Robert obtained information about Keller during the criminal proceedings, Jeanette amended her complaint to name Keller as a defendant.

Keller filed a cross-complaint against Jeanette, alleging causes of action for assault, battery, intentional infliction of emotional distress, malicious prosecution, and violation of the Bane Act. During her deposition Jeanette admitted Keller never "put her hands on" Jeanette. At Jeanette's request the superior court dismissed Jeanette's complaint against Keller without prejudice in January 2021. Keller's causes of action in her cross-complaint for assault, battery, and intentional infliction of

emotional distress proceeded to a jury trial. The jury found in favor of Keller and awarded her $193,255 in damages, including punitive damages. The court entered judgment in favor of Keller on August 21, 2023.[3]

C. *Keller Files This Action for Malicious Prosecution and Violation of the Bane Act*

In February 2024 Keller filed this action against Jeanette, Robert, and the Bisno business entities, alleging causes of action for malicious prosecution and violation of the Bane Act. In her malicious prosecution cause of action Keller alleged that, because Jeanette, not Keller, committed battery in the parking garage, Jeanette and Robert knew Jeanette's tort action against Keller lacked merit. Keller also alleged Jeanette and Robert prosecuted the underlying tort action for an improper purpose—to harass Keller and dissuade her from testifying in the criminal proceedings against Jeanette. In her cause of action for violating the Bane Act Keller alleged Robert obtained personal information about Keller during the criminal proceedings, which he used to "unlawfully intimidate, harass, and prosecute" Jeanette's action against Keller.

---

[3] Division Two of this court reversed the judgment on Keller's cause of action for intentional infliction of emotional distress, reducing the amount of her judgment to $10,355. (*Keller v. Bisno* (Oct. 27, 2025, B334054) [nonpub. opn.].)

D.    *The Bisno Parties File a Special Motion To Strike*
      *Under Section 425.16*

In September 2024 Bisno Management Company, LLC, Bisno Development Enterprise, LLC, and Bisno Real Estate Group, LLC filed a special motion to strike Keller's complaint under section 425.16.  Jeanette, Robert, The Law Offices of Robert H. Bisno, and The Bisno Family Limited Partnership later filed a joinder to the motion.  First, the Bisno parties argued Keller's complaint arose out of activity protected under section 425.16, subdivision (e)(1), namely, "protected speech in prior litigation."  Second, the Bisno parties argued Keller could not demonstrate a probability of prevailing on the merits of her complaint because claim preclusion and the statute of limitations barred her causes of action.

Keller opposed the special motion to strike, arguing section 425.16 does not protect unlawful conduct.  Keller argued that Jeanette and Robert unlawfully used information obtained during the criminal proceedings to name Keller as a defendant in Jeanette's action against Keller and that Jeanette and Robert "engaged in a pattern of harassment," including making "calls to [Keller's] job threatening to punish and financially cripple [her] for speaking" to prosecutors about the parking garage incident.  Keller also argued she would prevail on her claims for malicious prosecution and violation of the Bane Act.  She contended that, because Jeanette and Robert knew Keller never touched Jeanette during the parking garage incident, they knew Jeanette's action against Keller was meritless.  Therefore, Keller argued, Jeanette and Robert used the underlying action to "punish" her.  Keller also argued that neither the statute of limitations nor claim preclusion barred her action.  Regarding the Bisno business

6

entities, Keller argued she could establish those entities were "alter ego shell companies." Keller asserted that each of the entities, in filings with the California Secretary of State, listed Robert as the agent for service of process and Robert and Jeanette's home address as their principal place of business and that Jeanette used money from the bank accounts of the Bisno business entities to pay personal expenses.

E. *The Trial Court Denies the Special Motion To Strike and Grants Keller's Request for Attorneys' Fees and Costs*

The trial court denied the Bisno parties' special motion to strike under section 425.16. Regarding the cause of action for malicious prosecution, the court ruled on the first step that, because Keller's cause of action targeted Jeanette and Robert's litigation-related conduct, the cause of action arose out of protected activity under section 425.16. On the second step the court ruled Keller demonstrated a probability of success on the merits. The court concluded that neither claim preclusion nor the statute of limitations barred Keller's cause of action for malicious prosecution and that Keller demonstrated probable success on the merits with evidence that she had obtained a favorable result in the underlying action and that Jeanette and Robert maintained the underlying action without probable cause and with malice.

Regarding the cause of action for violation of the Bane Act, the court ruled at the first step that some of the conduct alleged fell within the scope of section 425.16: Robert's use of information he obtained during the criminal proceeding, his threats to sue Keller, and his prosecution of Jeanette's case against Keller. The

7

court ruled at the second step Keller showed probable success on the merits.  The court concluded the litigation privilege did not apply to Jeanette's and Robert's activity because the conduct underlying the Bane Act cause of action was identical to the conduct underlying the malicious prosecution cause of action.  The court also ruled neither claim preclusion nor the statute of limitations barred Keller's Bane Act cause of action.

Finally, the court ruled Keller submitted sufficient evidence to support her alter ego allegations regarding the Bisno business entities.  The court ruled that, because Keller demonstrated Robert was the registered agent for each of the entities, the entities all used Robert and Jeanette's home address, and Robert disbursed money from the entities to Jeanette at his discretion, Keller showed a probability of success on her allegation Robert and Jeanette disregarded corporate formalities.  The court also ruled that, to the extent the special motion to strike challenged the malicious prosecution cause of action against Jeanette and Robert, it was frivolous.  The court awarded Keller $9,500 in attorneys' fees and costs under section 425.16, subdivision (c)(1).

## DISCUSSION

A.    *Section 425.16*

Section 425.16, subdivision (b)(1), states that a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion

8

to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Courts evaluate special motions to strike under section 425.16 using a two-step process. "First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*); see *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061; *Clapkin v. Levin* (Mar. 16, 2026, B340606) ___ Cal.App.5th ___, ___ [2026 WL 733845, at p. 4].) We review de novo an order granting or denying a special motion to strike under section 425.16. (*Bonni*, at p. 1009; accord, *Clapkin*, at p. __ [p. 4].)

B. *The Trial Court Did Not Err in Denying the Bisno Parties' Special Motion To Strike the Malicious Prosecution Cause of Action*

1. *The Malicious Prosecution Cause of Action Arises Out of Protected Activity*

In ruling on a special motion to strike, the court considers at the first step "'the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'" (*Bonni*, *supra*, 11 Cal.5th at p. 1009; see *Park v. Board of Trustees of California State University*, *supra*, 2 Cal.5th at p. 1063.) "[T]he defendant must make

9

two related showings.  Comparing its statements and conduct against the statute, it must demonstrate activity qualifying for protection.  [Citation.]  And comparing that protected activity against the complaint, it must also demonstrate that the activity supplies one or more elements of a plaintiff's claims."  (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 887; accord, *Littlefield v. Littlefield* (2024) 106 Cal.App.5th 815, 826.)

The trial court did not err in ruling Keller's cause of action for malicious prosecution arose out of protected activity.  "A complaint for malicious prosecution is necessarily based on protected speech and petitioning activity."  (*Pasternack v. McCullough* (2015) 235 Cal.App.4th 1347, 1355; accord, *Escamilla v. Vannucci* (2025) 17 Cal.5th 571, 577; see *Green Tree Headlands LLC v. Crawford* (2023) 97 Cal.App.5th 1242, 1256 ["'A cause of action for malicious prosecution fits by definition into the scope of'" section 425.16].)

### 2. *Keller Demonstrated a Probability of Prevailing on Her Malicious Prosecution Cause of Action*

At the second step of the analysis under section 425.16, "for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."'"  (*Bonni*, *supra*, 11 Cal.5th at p. 1009; see *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 [at the second step "the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success"]; *Peterson v. Zhang* (2025) 116 Cal.App.5th 956, 967 [same].)

"Malicious prosecution is an intentional tort.  It offers a remedy to one subjected to a criminal charge or civil action that has been maliciously instituted or maintained.  [Citation.]  To

10

prevail, the plaintiff must show that a prior action was: commenced by or at the direction of the defendant; initiated or maintained both without probable cause and with malice; and pursued to a legal termination favorable to the plaintiff. [Citations.]  A malicious prosecution claim may lie against the attorney who prosecuted the prior action as well as the adverse party." (*Escamilla v. Vannucci*, *supra*, 17 Cal.5th at pp. 577-578; accord, *Ceron v. Liu* (2025) 112 Cal.App.5th 307, 311.)  The litigation privilege does not apply to malicious prosecution actions.  (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1242; *People v. Potter Handy, LLP* (2023) 97 Cal.App.5th 938, 950.)

Keller demonstrated a probability she would prevail on her cause of action for malicious prosecution.  It was undisputed Jeanette, represented by Robert, initiated the underlying tort action against Keller.  It was also undisputed Keller obtained a favorable termination of the underlying action:  Jeanette eventually dismissed it.  (See *Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 205 ["voluntary dismissal of the prior suit by the plaintiff—not resulting from a settlement—will, in general, constitute a favorable termination"].)

Keller also demonstrated her claim Jeanette and Robert lacked probable cause to initiate and maintain the underlying action had minimal merit.  ""[T]he probable cause element calls on the trial court to make an objective determination of the 'reasonableness' of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable."  [Citation.] A claim is unsupported by probable cause if any reasonable attorney would agree that it is totally and completely without

11

merit.'" (*Green Tree Headlands LLC v. Crawford*, *supra*, 97 Cal.App.5th at p. 1256; see *Landis' Labyrinth, Inc. v. Whitaker* (2025) 116 Cal.App.5th 724, 742 ["No reasonable attorney who knows an essential element of a claim is lacking would believe the claim is tenable."].)  In the underlying action Jeanette alleged Keller was the aggressor in the parking garage incident. Jeanette, however, subsequently admitted under oath Keller "never touched her," which meant Jeanette knew, from the outset of the underlying action, she based her complaint against Keller on allegations she knew were false.  (See *Green Tree Headlands*, at p. 257 ["[a] litigant will lack probable cause if he or she . . . "'relies upon facts which [s]he has no reasonable cause to believe to be true'"'"].)  Robert never denied knowing Jeanette was the aggressor, and in any event knew that fact when he received a copy of the video surveillance footage during the criminal proceedings against Jeanette.  (See *Maleti v. Wickers*, *supra*, 82 Cal.App.5th at p. 219 ["Even if the malicious prosecution defendant had probable cause to *initiate* the suit under a particular theory, his or her decision to continue to prosecute the case on that theory after learning it was not supported by probable cause may result in liability for malicious prosecution."]; see also *Peterson v. Zhang*, *supra*, 116 Cal.App.5th at p. 973.)

Keller also demonstrated her claim Jeanette and Robert acted with malice had minimal merit.  "[T]he malice element is directly concerned with the *subjective* mental state of the defendant in instituting the prior action . . . ."  (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878; accord, *Maleti v. Wickers*, *supra*, 82 Cal.App.5th at p. 222.)  "The requisite showing of malice 'is not limited to actual hostility or ill will toward plaintiff but exists when the proceedings are instituted primarily

12

for an improper purpose.'" (*Maleti*, at p. 223.) "The absence of probable cause alone does not establish malice. However, "'[m]alice may . . . be inferred from the facts establishing lack of probable cause.'"' . . . "And while '[a]dditional proof of malice can consist of evidence [of] a party *knowingly* bring[ing] an action without probable cause, a corollary to this rule . . . [is that] malice can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause.'" (*Id.* at pp. 223-224, internal citations omitted.) That both Jeanette and Robert knew Jeanette's allegations against Keller in the underlying action were false strongly supported an inference they brought the underlying action with malice.

The Bisno parties argue "[t]here was no credible evidence of any level to demonstrate Robert H. Bisno prosecuted the complaint [against Keller] with 'malice.'" But there was. Keller alleged Jeanette and Robert had a specific (and improper) purpose in mind when they brought the underlying action—to "intimidate and harass" Keller and to "punish . . . and financially cripple [her] for speaking and continuing to participate in" the criminal case against Jeanette. In opposition to the special motion to strike Keller submitted a declaration describing Robert's conduct: "He sent people to my house and my places of work to look for me"; "He would call me relentlessly and when I answered the phone told me that he would 'sue me for everything I have and ruin my life'"; and "He continued to threaten to destroy me financially and take everything I had worked for in life because I called the police on his wife." That's malicious conduct.

The Bisno parties argue Keller cannot prevail on her malicious prosecution cause of action for two additional reasons.

13

First, the Bisno parties appear to argue an unspecified statute of limitations bars Keller's malicious prosecution cause of action. They contend Keller's complaint was untimely because she filed it more than five years after Jeanette filed her complaint against Keller and four years after Keller filed her cross-complaint. The Bisno parties are incorrect.

The statute of limitations for malicious prosecution is two years. (See *Escamilla v. Vannucci*, *supra*, 17 Cal.5th at pp. 577-578, 586-587 [two-year statute of limitations applies to malicious prosecution action against an adverse party and the adverse party's attorney].) "Long-standing case law holds that a malicious prosecution action accrues when judgment is entered in the underlying suit . . . ." (*Id.* at p. 589; see *Pasternack v. McCullough* (2015) 235 Cal.App.4th 1347, 1356 ["'a cause of action for malicious prosecution *accrues* upon entry of judgment in the underlying action'"].) Thus, Keller's malicious prosecution cause of action accrued when the trial court entered judgment in the underlying action on August 21, 2023. Keller filed her complaint in this action in February 2024, well within the two-year statute of limitations.

Second, the Bisno parties argue claim preclusion bars Keller's malicious prosecution cause of action against Jeanette. "*Claim preclusion* 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824; accord, *Prime Healthcare*

14

*Management, Inc. v. Superior Court* (2025) 117 Cal.App.5th 127,
143.)

The Bisno parties have not provided a record on appeal
sufficient for us to review this issue. As the appellants, the Bisno
parties had the burden to provide an adequate record and to cite
the portions of the record supporting their arguments. (See *L.O.
v. Kilrain* (2023) 96 Cal.App.5th 616, 619-620 [an "'appellant
must present an adequate argument including citations to
supporting authorities and to relevant portions of the record'"];
*In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 808 ["'a
party's failure to perform its duty to provide argument, citations
to the record, and legal authority in support of a contention'"
forfeits the issue]; Cal. Rules of Court, rule 8.204(a)(1)(C) [parties
must "[s]upport any reference to a matter in the record by a
citation to the volume and page number of the record where the
matter appears"].) The Bisno parties did not do any of this.

The Bisno parties argue that, in the underlying action, the
court ruled on a motion in limine, which they call "MIL No. 5,"
and that the court's ruling is "binding" in this action. The Bisno
parties, however, do not cite the portion of the record containing
"MIL No. 5." The Bisno parties cite to a page of their "motion for
reconsideration"[4] of the court's tentative ruling on the special
motion to strike in this case and to a page from a transcript of a
proceeding in the underlying action that does not include a ruling

---

[4]     On October 22, 2024 the trial court issued a tentative
ruling on the special motion to strike. The court, however,
continued the hearing and requested supplemental briefing.
Before the court issued its final ruling on the special motion to
strike, the Bisno parties filed a "motion for reconsideration." The
court denied the motion because it was procedurally improper
and lacked merit.

15

on a motion in limine.  Though the record contains a copy of a "motion in limine no. 5" filed by Jeanette in the underlying action, there does not appear to be a ruling on that motion in the 13 volumes of the clerk's transcript—an unusually large record in an appeal from an order on a special motion to strike under section 425.16.  The Bisno parties have not cited any such ruling. And though Keller cites an August 1, 2023 minute order from the underlying action, that order states only "[t]he issue as to malicious prosecution is discussed.  In the absence of a court reporter, counsel are to make their own notes as to the issues the Court raises."  And counsel for Keller represented to the trial court "there was never a final ruling on the merits as to the claims for Malicious Prosecution and the violation of the Bane Act" in the underlying action.

C.    *The Trial Court Erred in Denying the Special Motion To Strike the Bane Act Cause of Action*

1.    *The Bane Act Cause of Action Arises Out of Protected Activity*

"The Bane Act provides for liability for the interference or attempted interference with a person's state or federal constitutional rights 'by threat, intimidation, or coercion.' [Citation.]  To plead a cause of action under the Bane Act, the plaintiff must show '(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion.'"  (*Wiley v. Kern High School Dist.* (2024) 107 Cal.App.5th 765, 774; accord, *Animal Protection & Rescue League, Inc. v. County of Riverside* (2025)

111 Cal.App.5th 914, 920; *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 67; see Civ. Code, § 52.1, subd. (a) [authorizing a civil action if a person "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion" with the exercise or enjoyment of constitutional rights].)

Keller alleged the Bisno parties violated the Bane Act by maliciously prosecuting the underlying tort action against her. As Keller argued in opposition to the special motion to strike her Bane Act claim, "[t]here never was a proper purpose to the underlying litigation," which she contended the Bisno parties used to threaten and harass her and to "to dissuade [her] from participating in the criminal case and enjoying the protections afforded to victims of crime." As discussed, this conduct is protected under section 425.16.

### 2. *Keller Did Not Demonstrate a Probability of Success on Her Cause of Action for Violation of the Bane Act*

As discussed, the plaintiff must prove two things to prevail on a cause of action for violation of the Bane Act: (1) the defendant(s) intentionally interfered or attempted to interfere with a state or federal constitutional or legal right and (2) the interference or attempted interference was accomplished through "threats, intimidation or coercion." (Civ. Code, § 52.1, subd. (b); see *Wiley v. Kern High School Dist.*, *supra*, 107 Cal.App.5th at p. 774.) Where, as here, the "threats, intimidation and coercion" involve only speech, the speech must include a threat of violence. (Civ. Code, § 52.1, subd. (k).) Because Keller did not allege Robert or Jeanette threatened her with violence, she failed to

17

demonstrate a probability she would prevail on her Bane Act cause of action.

Keller demonstrated the Bisno parties attempted to interfere with a right protected by the California Constitution. Keller alleged the Bisno parties, by maliciously prosecuting the underlying action, attempted to interfere with her rights under the Victims' Bill of Rights of 2008 (Marsy's Law). (See Cal. Const., art. I, § 28, subd. (b).) "Marsy's Law was intended 'to strengthen and increase the number of crime victims' rights.' [Citation.] Marsy's Law 'find[s] and declare[s]' that the rights of victims of crimes and their families include 'personally held and enforceable rights described in . . . subdivision (b)' [citation], which in turn sets forth 17 specific rights to which a crime victim shall be entitled." (*People v. Board of Parole Hearings* (2022) 83 Cal.App.5th 432, 447.) One such right is "[t]o be treated with fairness and respect for his or her privacy and dignity, and to be free from intimidation, harassment, and abuse, throughout the criminal or juvenile justice process." (Cal. Const., art. I, § 28, subd. (b)(1).) Another is "to reasonably confer with the prosecuting agency, upon request, regarding, the arrest of the defendant if known by the prosecutor [and] the charges filed . . . ." (Cal. Const., art. I, § 28, subd. (b)(6).) And as discussed, Keller stated Robert called her relentlessly, threatened to ruin her life by suing her, and said he would destroy her financially because she filed a police report against his wife.

The Bisno parties argue Keller cannot prevail on the second element—that the Bisno parties' actions constituted "threats, intimidation, or coercion," within the meaning of the Bane Act. The Bisno parties contend that the court in the underlying action resolved the Bane Act cause of action against Keller and that

18

claim preclusion bars Keller from relitigating the cause of action in this case. The Bisno parties are incorrect. As discussed, claim preclusion bars relitigation of the same cause of action between the same parties after a final judgment on the merits in the first suit. (See *DKN Holdings LLC v. Faerber*, *supra*, 61 Cal.4th at p. 824.) Claim preclusion does not apply here because the causes of action are not the same. True, Keller asserted a Bane Act cause of action in the underlying action, and she does so here. But in the underlying action Keller alleged Jeanette's battery violated the Bane Act. Here, Keller alleged the Bisno parties' harassment and prosecution of the underlying tort action violated the Bane Act—an issue that was not (as far as we can tell from the record) litigated in the underlying action.

Nevertheless, as the Bisno parties argue, because Keller did not allege Robert or Jeanette threatened her with violence, Keller did not allege facts sufficient to constitute a cause of action for violation of the Bane Act. Civil Code section 52.1, subdivision (k), states: "Speech alone is not sufficient to support [a Bane Act cause of action] except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat." Consistent with this statutory language, courts have held that, where the alleged threats, intimidation, or coercion consists solely of speech, the plaintiff must allege and submit evidence the defendant threatened violence. (See *Julian v. Mission Community Hospital* (2017) 11 Cal.App.5th 360, 395 ["[s]peech is insufficient to establish the requisite threat unless it

includes threat of violence"]; see, e.g., *Animal Protection & Rescue League, Inc. v. County of Riverside, supra,* 111 Cal.App.5th at p. 921 [plaintiff did not state a cause of action for violation of the Bane Act where "the complaint allege[d] only a spoken threat" and did not allege that the defendant arrested the plaintiff, "that he used force of any kind, or that he did anything more than allegedly stating that he would arrest her"]; *Wiley v. Kern High School Dist., supra,* 107 Cal.App.5th at p. 777 [plaintiff did not state a cause of action for violation of the Bane Act where the plaintiff did not allege the defendant engaged in violence, but alleged only that the defendant painted her in an "uncharitable light"].)

Keller alleged Robert made coercive and threatening statements. As discussed, Keller alleged the Bisno parties used information Robert received during the criminal proceeding to name her as a defendant in the underlying action, to intimidate and harass her, and to prosecute the underlying action against her. She also alleged they called her workplace and threatened, through litigation, "to punish" and "financially cripple [her] for speaking and continuing to participate" in the criminal case against Jeanette. And in her declaration Keller said Robert called her relentlessly and threatened to ruin her life by suing her. Critically, however, Keller did not allege Robert (or anyone else) threatened violence against her or her property. She alleged Robert's threats "caused [her] to fear for her safety, the safety of her assets, and her ability to exercise her victim's rights as they related to the criminal prosecution of" Jeanette. But while she may have feared violence might occur, she did not allege Robert threatened violence toward her.

20

As in summary judgment proceedings, the pleadings define the claim for purposes of a special motion to strike under section 425.16.  (See *Nirschl v. Schiller* (2023) 91 Cal.App.5th 386, 404 ["'plaintiff's complaint ultimately defines the contours of the claims'"]; *Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 883 ["the act or acts underlying a claim for purposes of [section 425.16] *is determined from the plaintiffs' allegations*"].)  Thus, though Keller stated in her declaration Robert sent people to her house and office—conduct that could cause a victim of a crime to fear for her physical safety—we cannot rely on that evidence in determining whether Keller demonstrated a probability of prevailing on the Bane Act cause of action.

> D.    *The Trial Court Did Not Err in Declining To Strike Keller's Alter Ego Allegations*

The Bisno parties also argue Keller did not show a probability of prevailing on her alter ego allegations.  The Bisno parties, however, did not move to strike those allegations.  The trial court did not err in declining to grant a motion the Bisno parties did not make.  (See *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 627, fn. 5 [declining to consider an argument the defendants did not make in their special motion to strike in the trial court].)

In any event, even if the Bisno parties had moved to strike Keller's alter ego allegations, her theory the Bisno parties are liable as alter egos for each other's conduct is not a "claim" under section 425.16.  To qualify as a claim under section 425.16, "[t]he targeted claim must amount to a 'cause of action' in the sense that it is alleged to justify a remedy."  (*Baral v. Schnitt*, *supra*,

21

1 Cal.5th at p. 395; accord, *Nirschl v. Schiller*, *supra*, 91 Cal.App.5th at p. 407; *Durkin v. City and County of San Francisco* (2023) 90 Cal.App.5th 643, 652.) "A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation where the corporate form is being used by the individuals to escape personal liability, sanction a fraud, or promote injustice." (*Hennessey's Tavern, Inc. v. American Air Filter Co.* (1988) 204 Cal.App.3d 1351, 1359; accord, *Angel Lynn Realty, Inc. v. George* (2025) 114 Cal.App.5th 655, 661-662; *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 418-419.)

Finally, even if the Bisno parties had moved to strike Keller's alter ego allegations, and even if her alter ego allegations qualified as a claim under section 425.16, those allegations do not arise out of protected activity. Alter ego allegations involve whether there is a unity of ownership interests between a corporation and its equitable owner, commingling of funds, undercapitalization of business entities, and disregard of corporate formalities, and whether it would be inequitable to treat challenged conduct as that of the corporation rather than that of the individual. (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 301; *Cam-Carson, LLC v. Carson Reclamation Authority* (2022) 82 Cal.App.5th 535, 549; *Zhang v. Chu* (2020) 46 Cal.App.5th 46, 53-54.) None of that has anything to do with speech or petitioning activity.

E.    *The Trial Court's Order Granting Keller's Request for Attorneys' Fees Is Not Appealable*

In a single paragraph at the end of their opening brief, the Bisno parties argue the "sanctions of $9,000 should be reversed." Though the Bisno parties do not cite the ruling they challenge, it appears they are contesting the trial court's award of $9,500 in attorneys' fees and costs under section 425.16, subdivision (c)(1). We do not have jurisdiction to hear an appeal from that order.

"An 'appellate court generally lacks jurisdiction to decide an appeal from an order unless the order is one that is expressly made appealable by statute.'" (*Clapkin v. Levin* (Mar. 16, 2026, B340606), *supra*, __ Cal.App.5th at p. ___ [p. 9]; see *Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 652 [same]; *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696 [a "trial court's order is appealable when it is made so by statute"].) Section 425.16, subdivision (i), states: "An order granting or denying a special motion to strike shall be appealable under Section 904.1." And section 904.1, subdivision (a)(13), provides an appeal may be taken from "an order granting or denying a special motion to strike under Section 425.16." Neither section 425.16 nor section 904.1, however, authorizes an appeal from an order granting or denying a motion for attorneys' fees. And as we recently explained (see *Clapkin* at p. __ [p. 9]), it makes no difference whether the trial court issues a separate order on a motion for attorneys' fees or, as here, includes its ruling in the order granting or denying the special motion to strike. Either way, the aggrieved party is not entitled to interlocutory review of the court's ruling on the motion for attorneys' fees. (See *Doe v. Luster* (2006) 145 Cal.App.4th 139, 142 [an order denying a motion for attorneys' fees filed by a

plaintiff who successfully opposed a special motion to strike is not appealable].)

## DISPOSITION

The order denying the special motion to strike is reversed. The trial court is directed to enter a new order denying the special motion to strike Keller's malicious prosecution cause of action and granting the motion to strike the cause of action for violation of the Bane Act.  The appeal from the order awarding attorneys' fees is dismissed.  The Bisno parties' request for judicial notice is denied as unnecessary.  Keller's request for sanctions is denied.  The parties are to bear their costs on appeal.


                                        SEGAL, J.


We concur:



          MARTINEZ, P. J.



          STONE, J.